Good morning, Your Honors, Counsel, Angel Martinez on behalf of the United States Government. May it please the Court, a fundamental requirement to adjust status to lawful permanent residence is to have been inspected and admitted. When Congress takes away that requirement, it does it explicitly in two ways. It either says that that requirement does not apply or that the people trying to apply for adjustment of status are considered to have been inspected and admitted or paroled. Nonetheless, we are here today because the district courts in these cases held that despite lacking the terms inspected and admitted, the Temporary Protected Status statute inherently includes an inspection and admission for its beneficiaries. But those holdings are incorrect because they are contrary to the plain language of the statute and this Court should reverse it. Now, help me with the opening phrase of the F-4, for purposes of adjustment of status under section, sorry I get the mic, for purposes of adjustment of status under section 1255, the whole section, doesn't that take care of most of your arguments? No, Your Honor. Speaking in plain language, that's plain language. No, Your Honor, because although the TPS provision applies to the whole adjustment of status provision in section 1255, the benefit of the TPS provision goes to a specific subsection of 1255. Why didn't they say then, I think you're saying C something, C, what is it, C3, C2? C2, C2, I'm sorry. Yes, Your Honor. I've got it here in my hand. Why didn't they say 1255 C2 then? They said 1255. Because they didn't need to say it, Your Honor. The language in the TPS provision mirrors exactly the bar, or almost exactly the bar for failure to be and maintain lawful status under C2. What Congress did in the TPS statute was mirroring that provision to make it clear that TPS beneficiaries would be considered to be in lawful status and avoid that bar. And this makes sense because the only way that you can get to an inspection and admission by considering that TPS addresses all of 1255 is if you consider that lawful status and admission are the same. Lawful status in that phrase is separate from an admission. They're different concepts. Why? Because an admission is an application to enter the United States approved at the port of entry by an immigration officer versus lawful status is the permission that you have to be. What about our court's case that says admission and admitted means several different things in the immigration statute? And if you, I had a clerk word search it, if you start through there, sometimes it's used for many different odd meanings, the words admitted and admissions. It might mean different things if, outside of the plain language of the statute, and this is something that the court has held in the Roberts case, but in the limited instance of addressing ineligibility for waiver of inadmissibility, the court found that the defer to the agency's interpretation of it. My point regarding lawful status not being an admission is that you can have an admission and not have lawful status or fall out of lawful status, but more importantly, you could have lawful status and not have been admitted. And some examples of that are asylum. People that have asylum benefit in the United States have lawful status and they haven't been admitted. Parole in place, so members of our military might be in lawful status, but they haven't been admitted. VAWA, Violence Against Women Act beneficiaries, U visa beneficiaries, T visa beneficiaries, these are all examples of how these concepts are different. And because these concepts are different, applying the benefit of the TPS statute provision to the whole of Section 1255A is inconsistent and incorrect. Okay, my next plain language point for you, it says being in lawful status. That's the F4, you know what I'm referring to. That's in this hand, by the way. And in this hand is the 1255, and it only has the word maintain. And that's what... So that tells me that they don't mesh, like your argument says. They match, Your Honor, actually, because the Adjustment of Status statute says a person must be in lawful status at the time they submit the application and to have continuously maintained lawful status. That's the way the Adjustment of Status statute was written. And the TPS statute mirrors that. Now wait, that's not in C2, right? It is C2, Your Honor. C2 doesn't have the being in concept, does it? It does. Okay, tell me where. I'm looking at it. So Section 1255C2 says that an applicant must be in lawful status or have maintained lawful status. Congress made a distinction for both by using the disjunctive or. And so the TPS statute addresses both of those bars but does not extend to anything outside of that bar. And the Circuit Circuit has actually agreed with that argument. The Fifth Circuit has found in the context of the Crewman Bar to Adjustment, which is different from lawful status, that TPS does not cover that Crewman Bar of Adjustment because it does not extend beyond C2. In essence, the Fifth Circuit found that TPS is not a Carter Branch free pass for Adjustment of Status. That addresses the difference between lawful status and admission because one can be in lawful status and not have been admitted. So how do we deal with the lawful status as a non-immigrant? What's the definition then of non-immigrant? Isn't that someone who's been admitted? No, Your Honor. And this is the second way that TPS beneficiaries in the position of plaintiffs here want to attain that inspection and admission by taking the word non-immigrant in a phrase, assigning that non-immigrant status to TPS beneficiaries, and computing that mistake by saying that a non-immigrant has necessarily been admitted. The simple fallacy in that argument is that one can be in non-immigrant status and not have been admitted. For example, victims of domestic violence or people that cooperate with law enforcement authorities are able to attain non-immigrant status through a U visa despite not having been admitted. Victims of human trafficking can be non-immigrants under T visas and they were not. They were not admitted. This is beyond the point that TPS beneficiaries are not non-immigrants to begin with because the phrase says considered as. The purpose of including that word non-immigrant in the provision of the TPS statute is to address the presumption under the INA that all aliens, and I use that word, it's used in immigration context to refer to non-citizens and nationals, all aliens are presumed to be immigrants unless they fit another category. So Congress, I'm sure, intended to say TPS beneficiaries are to be considered non-immigrants to preclude them from being considered immigrants, which wouldn't require an adjustment of status. And my next plain language for you is, neither of you talk about this, but the titles to these laws and these subsections were enacted by Congress and they've been enacted by Congress several times apparently. So shouldn't we give some meaning to the title of 1255, adjustment of status of non-immigrant to that of person admitted for permanent residence, and that fits right back with C-4. C-2, Your Honor, the bar for... No, I'm sorry, I should have said F-4. F-4. F-4. I was looking at this hand. The F-4 dovetails with the title of 1255, which Congress has passed several times. Indeed, Your Honor, and that's why the government's position is that C-4 addresses that bar only for failure to be or maintain lawful status, despite referencing... This is the title of 1255, the big one across the top. I'm sorry, it says adjustment of status of non-immigrant to that of person admitted for permanent residence. Congress passed that several times. It's beyond everything, but I bet you any number of the Congress and Senators only looked at that title in passing it. Well, I'm not sure that I understand Your Honor's question, but... It's called plain language, the plain language of what Congress passed. And the plain language, I think, that this Court should consider also in the context of the Holt Statute, and in the context of the Holt Statute, there is a distinction between  says so in general. And that is the one way that people can adjust status. There are no... The TPS beneficiaries can seek to adjust status. And it is particularly telling, again, that when Congress intends to accept people from an inspection and admission requirement, it does so explicitly. It does so explicitly... It did so explicitly for U-Visa beneficiaries, T-Visa beneficiaries, Violence Against Women Act beneficiaries. Under that plain language of the statute, they are deemed to have been inspected and admitted or to not... The requirement doesn't apply. In fact, everybody could apply... I'm sorry, Your Honor. That you could finish your... Anybody could have applied for an adjustment of status despite an inspection and admission up until a certain date under the statute, and that's April 2001. So this reflects Congress's way of acting that whenever it intends for people to not be subject to that threshold requirement, it is explicit. It knows how to do it. I think that... When you talk... When you have said they're deemed to have been admitted and inspected, and that isn't in the statute, but is that... Is deemed the same... Should that take on the same meaning as shall be considered? Well, I think shall be considered is different. Shall be considered addresses the unlawful or the bar. So to answer Your Honor's questions directly, I think that the TPS statute says they shall be considered as being in lawful status for the purpose of that lawful status bar, but then using the word as non-immigrants makes it clear that Congress did not intend for TPS beneficiaries to actually be considered non-immigrants. I would like to reserve the remaining time. I have to weigh in here because this case has been briefed and argued so far today, not taking into account HGG. Your brief was filed just days before HGG. Your reply brief and the amicus brief remarkably didn't cite it, but it is a precedential decision  Yes, Your Honor. HGG explicitly says that the answer is the same whether it views the statute as ambiguous or unambiguous. Do you, on behalf of the government this morning, support that? Yes, Your Honor. Our position is that if this court finds that... All this plain language stuff, even if you're wrong on that, that's only the first half of the analysis. Yes, Your Honor. We believe that if the court reaches the conclusion that the language is ambiguous, it should, as it has done before, defer to the agency's interpretation of it because it is contemporaneous. It's a Chevron question, of course. Yes, Your Honor. The agency's interpretation is binding upon the agency. It's a precedential decision. In fact, the plaintiffs in this case do not address that argument. And we would position, we would submit that... The decision didn't exist when they briefed the case. But we submitted a 28-J letter, Your Honor, subsequently, and we advised the court that the decision was... I understand. Yes. And that was appropriate. But I assume counsel's going to address it this morning, and I'm... From my standpoint, they better. I think so, too, Your Honor. Unless the court has further questions, I'd like to reserve the balance of my time for rebuttal. Thank you. Mr. Wilson? Good morning, Your Honor. I think I'll jump to answering the question you just posed, which, about HGG, since it's on the court's mind. First off, it's important to highlight that that case is actually pending before the federal district court in Minnesota. I'm the one litigating it. So that question is... Yeah, and the district, is that, what's, Bonilla? No. No. HGG itself. Bonilla got... Well, yeah. But Bonilla got granted, and then the government dismissed their appeal. They withdrew it rather than letting it get to this court. But the matter of whether HGG is a sound decision is now pending before a federal district court where the challenge is underfoot. You're saying we can't... Now, wait a minute. I'm not saying anything. I'm just alerting you to the status of the case, Your Honor. I'm not saying... That should have been in a responsive 28-J letter. That would have been helpful information. But as far as I'm concerned, it's irrelevant to the task before us today. And I would submit it is for two reasons. One, it wasn't the record that was submitted to the court. And so it wasn't the position of the agency at the time it rendered its decision. The administrative record... So what? Well, so because the government... I mean, for our judicial review, so what? Because that case, Your Honor, had been pending with the agency for over two years and had not been brought forth as part of the record. And the decision says we are being consistent with decades of the agency's position, rejected wrongly in our view by two circuits and the District of Minnesota decisions. Correct. And so then as it relates to HGG itself, my response to that case is it is utterly wrong. Any case that... by discussing the legislative history going back decades as the core argument is running from the actual words in the statute. They spend nearly a page, if not two, on the actual... Is the they the B and A? The AO, actually. It's the Administrative Appeals Office, which oversees CIS. So it's kind of taking a circular route. But nonetheless, that case is an exhaustive exercise in futility from my standpoint, because they're arguing the legislative history, and they're selective when they do it, because they don't point out, for example, by the time the law was actually enacted, the focus was no longer China. The focus had become El Salvador. There were motions made to strip out provisions relative to El Salvador, and the awareness of Congress at the time that the people who would benefit from the statute were in the country without inspection already was in the record. It was at the forefront of the issue. It was actually part of the debate. Senator McCollum was one of the ones who was trying to strip out the provision that's at issue here. So to that end, HGG does not do justice to the congressional record, but it also... and simplify the analysis by going, well, look what Congress was thinking about when the topic came up to justify where it is today. And where it is today is the language is crystal clear. Considered as being and maintaining, which means to consider something is to give it the effect... Here's my problem with the plain language. Go back to the definition of admitted, and it says, counsel, let me give you the question. And it says, for all purposes in this whole chapter of all immigration law that there ever is here in statute, admitted means lawful entry in the United States, period. How is that not a big hurdle for you? Easily, Your Honor, two reasons. One, lawful entry is not the same thing as physical entry. In other words, lawful entry can be accomplished after the fact. The government highlights the U visa as an example. A person is physically present, but then lawfully admitted into that status while present in the United States. They seem to conflate that with 1255, which is a different issue. I'm sorry, I didn't read you the end of it, because it says, after inspection and authorization. Correct, by an immigration officer. So please address the whole sentence. Sure, I will, happily. So it's after inspection and authorization by an immigration officer. So inspection has actually been defined by the BIA, which is all it means is to comply with a procedural regularity. That's why we have waive-in cases. That's why we have people waived in by the customs officer, and they were presented, they were inspected, and they were admitted in any status. The board has recognized that going on almost 20 years, and to that end, an immigration officer does not say customs officer. It says an immigration officer, which could be anyone in the Department of Homeland Security. So when a person submits an, I'm sorry? I don't think that's right, but maybe it is. It says immigration officer, Your Honor. It has been, and it hasn't been amended since the Homeland Security. Is immigration offering employee in the Department of Homeland Security? I would submit someone duly authorized to adjudicate the act of inspection, correct? One more basic question. Is immigration officer defined in the law? The statute, you know? I'm sure somewhere in the regulations there's a definition as to... No, no, no. Just the statutes. I've got enough trouble with these statutes. I'm not aware of the actual, if there is a definition of immigration officer. Okay. We can check. Go ahead. I do think, though, in relating back to 1184 and the definition on immigrant, which is where admission comes up, the Attorney General is empowered to regulate, so I think that's where the... Through that nexus, the Attorney General then, or now the Secretary of Homeland Security, could designate who is an authorized immigration officer for this purpose. But I don't think the government has ever maintained that USCIS is unauthorized to conduct an inspection. Even by their own argument, U visas get inspected. Individuals for... And they've conceded in the cases that have already been established, there is a form of inspection. CIS does it. They're really focusing on the admission component. And so admission does not, as the court has pointed out in its own questioning and has been noted here, is not confined to a land border. There's nothing that actually says port of entry. The location of the entry is not limited by the words of the statute itself. 1101A13 does not have a CIS requirement, which... So that gives the agency, province to admit where the question is posed, and in practicality that happens. You have border entries from Canada all the time. They don't happen literally on the border. Sometimes people have to drive 25 miles in. Are we going to consider them at that point not admitted because they appeared off the line? We have people appearing in Shannon, Ireland for pre-flight inspection, Toronto, Canada. They're all... Okay, that... But they're all variants of the same thing. Location doesn't control... It's not relevant to the statutes either, the specific points that are being debated like deemed and so forth. I meant to ask you, the AOT treating C2 and F4 as two separate hurdles for your clients to clear is not the way I read the district court's opinions in the briefs. And they can rate me out on that, are they right that C2 is a hurdle on top of, and am I right? If so, your clients wouldn't satisfy C2 as construed, is that right? Not in this case, Your Honor. And the reason is because they qualify as immediate relatives. So under 1255, they are actually exempted from C2 itself. Immediate relative is not required to be maintaining status at the time of the adjustment status. That point comes up though in HGG because HGG is actually what I would describe as a preference case. There isn't a citizen involved that would qualify someone as an immediate relative. So in HGG, it shows actually somewhat the flaws in the analysis. The AAO starts with the C2 component rather than starting with the first threshold question, which is 1255A, are you admitted, inspected, or paroled? And so that is the threshold. It's a procedural regularity. It is not meant to be substantive. The substantive requirements for residency come through Section 1182. Ultimately, whether someone is allowed to become a resident is governed by the standards in that provision. So to the extent that the government has argued that 1255 has embedded exceptions relative to residency, it really doesn't. What it has is exceptions relative to maybe 1255A, only in the unique context of Congress decided that a certain class of individuals, such as special immigrant juvenile status beneficiaries, viral beneficiaries, they will not be subjected to 1255A. But the other categories the government just identified, STUV, those categories are actually considered admitted. They satisfy 1255A. The BIA itself has concluded that a person is admitted and satisfies 1255A. It's come up through a circular path, which is whether a person can be removed as someone already here or someone who's still arriving. And the BIA said, no, once you're a new visa status, you are admitted, regardless of where it took place. So 1255, and 1255M in particular, is not addressing the question as a 1255A. It's really resolving the question of 1255C2. But we don't get there here. We don't need 1255C2. It's not relevant to immediate relatives. And that's so the question posed is actually beyond the scope of the question before the court. Really, the question before the court is— An alternative in HGG. I mean, F4 was the main focus. F4 was the focus, but it was—and then it goes to the second—I would describe it as a second tier question. First you have to get through the admission and inspection question. Any application for adjustment of status starts with, are you adjusting from something? Just conceptually, that's why they call it an adjustment, not a change or acquisition. And so you have to—that's what A is testing. Do you have something that is worthy of adjusting? You have to be in non-immigrant status to then move on to permanent status. It's logical. It's not—Congress doesn't get credit for that very often, but it's logical. So to that end, that's why 1254-AF4 specifically mirrors the title. If you have immigrant status, you don't need adjustment. Well, correct. Basically. Correct. So non-immigrant—I mean, it's binary. It's A or not A. True, but— Non-immigrant status is not A. That's true, Your Honor, but there are other forms of adjustment within the INA itself on their section. I can't remember the code version. It's for asylum, for example. It only sets the table, then. You've got to look at various—what is it—21 categories of non-immigrant status. Well, yes, that's true, but there is other forms of adjustment onto itself, is my point. So it's outside of the 245 realm—or, excuse me, 1255 realm. 1255 is explicitly addressing people who are seeking to leave the status of non-immigrant behind and become permanent residents. So that's a funneling provision in some sense, but the threshold question still becomes, have you been admitted and inspected? So as the title of that provision suggests, just as Her Honor has pointed out, it mirrors 1254 AF-4. It mirrors it. The other issue, it is for purposes of you will be treated as a non-immigrant. They dovetail right into each other. The Ramirez case pointed that out. So has, I believe, the district court in the case of Medina out of Pennsylvania. So the issue that has come up—and Medina speaks to the question Your Honor is asking regarding C-2. It says that the problem with the C-2 argument is that it would require the court to scratch out considered as being in 1254 AF-4. You would have to actually ignore the language because C-2 does not per se match. I was curious about C-2 as an alternative. You've said it isn't here because they don't have a C-2 problem. End of C-2 discussion. I mean, I know it's referenced and interrelated in the opinions and briefs, but not by the AO and HGG. It was related—it was addressed at the district court level in this case, Your Honor, as an alternative as to why 12—the scope of 1255. So to that end, it is worth addressing from my standpoint. But nevertheless, it doesn't—in terms of trying to identify which part of 1255 is addressed by the TPS statute, my position is the language is very clear. It addresses the section. It doesn't try to confine it. And as such, Congress spoke openly for a reason because they were recognizing the unique nature of the temporary status and as such were making sure that the persons were afforded that benefit. In 1254 A-5, the Congress wrote as a clarification, the grant of temporary protective status shall not be inconsistent with temporary—excuse me, I bungled it—the grant of temporary protected status shall not be inconsistent with lawful nonimmigrant status. Again and again within that very section of law, 1254 A, reinforces we want these individuals treated as nonimmigrants, which means by definition, nonimmigrant is defined in the law as someone who's admitted. Regardless of where the admission takes place, Congress was aware they could have—that admission was going to be happening in the United States under that provision or be at least be considered as much because they're aware TPS is in response to people in the country. If we conclude that HGG is a precedential decision of the agency that is eligible for Chevron deference, do we decide the question or remand? Since it obviously wasn't considered by the district court. I would posit that you would have to remand it, Your Honor. Why? What district court case would require that? Well, it's because the parties did not address either Skidmore nor did the court on remand. You addressed Skidmore because HGG wasn't on the books. No, but the arguments the government was making was similar to what was raised in HGG already. So to that extent, the court didn't engage in an analysis of the second prong of Chevron. It said the plain language controls. So at that point, the court has not made a ruling for which this court—that it needs to actually have an opportunity to do that. It hasn't concluded whether deference is owed. It was actually very clear in both decisions. The language is clear. There is no deference. It's unambiguous. The government's argument seeks to inject ambiguity into very clear language. And that's what HGG does. HGG injects? Yes, mightily. The court basically says, okay, if you think there's—if you think that there's not—that our view of the plain language is wrong, there's clearly not plain language to the contrary. So we move to the Chevron second, if a statute is ambiguous, review. Understood. The alternative, Your Honor, instead of a remand, actually, would just—that I would ask for the opportunity for supplemental briefing on the question, and I think that may be a more efficient way to resolve it anyways, because it's ultimately going to come back here anyways.  Your Honors, this Court may not need to remand this case at the district court to consider HGG, because HGG's position is the same as it has been since 1990, and the court was aware of it and refused to consider it. In addition to that, under the Chevron analysis, the agency's interpretation need not be the best interpretation. It need not be what the court would find most agreeable. It need only be reasonable. And HGG is a reasonable interpretation because it is consistent with how this has been interpreted since 1991, a year after the TPS statute was passed. So— I've had case after INA case where lawyers for the government and opposing the government have made a big deal about whether an agency decision is precedential, and have basically argued, at least the alien attorneys, that unless it's precedential, it's just Skidmore. And you don't have to really worry about it, because the agency always flunks under Skidmore. So now we have one that's precedential. So it's not just—this was all before the district court. It was argued under Skidmore. It was under Skidmore, Your Honor, but my point is that it's not different. The district court has lectured us quite often on the difference. Yes, Your Honor, but what would the district court do in this case? This case is not about challenging HGG. I'm not saying remand is the right answer. I just think you're, oh, you don't have to remand, and the reason you gave is not sound as a matter of administrative law. I think that the court, if it finds the language ambiguous, the proper procedure under Chevron is to defer to an interpretation that is precedential. If the court does not want to deem that precedential under Chevron, it should still defer to it under Skidmore, because it is persuasive. So the court can determine this case at this point without supplemental briefing or a remand, because the agency's position is now precedential, and even if it weren't precedential, it has been consistent. I want to address Judge Benson's question regarding the definition of admission. My friend argues that an admission can also occur after an adjustment of status, but that occurs after an adjustment of status for those instances in which people can adjust status without having been admitted in the first place. Why? To prevent oddities that would occur in immigration law if someone is under permanent lawful status and has not been admitted. So you impute an admission in that case, so they are not deemed removable, for example. Another instance in which an admission is imputed is whenever somebody obtains a temporary immigration benefit, so without having been admitted. So the Family Unity Program, for example. So if somebody has a temporary immigration benefit and they weren't admitted, well, we're going to impute an admission so that they are not deemed removable in immigration court. Well, counsel, doesn't that, the clarification A-5 provision, doesn't your argument go right to making the A-5 decide this case then? The granting of TPS is not inconsistent with granting of non-immigrant status. Well, but that goes to the point, Your Honor, that just because you aren't a non-immigrant doesn't mean that you have been admitted. There's various instances in which people are in non-immigrant status and weren't admitted, but in those instances, Congress drafted a pathway to adjustment of status explicitly. Here, my friend is saying that Congress gave a benefit in silence when it does so by saying so explicitly in other cases. Thank you very much.